

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

FILED
NOV 1 5 2001
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Mark Fritcher and IAA Trust Company )
                Plaintiffs )
)
vs. ) Case No.  00-1210
)
Health Care Service Corp., )
                Defendant )

### ORDER

This case is again before the court for calculation of damages, interest, and attorneys fees. With one exception noted below, the parties have supplemented their pleadings in compliance with the court's Order of August 8, 2001.

### Damages

At the time this court entered its August 8, 2001 order, plaintiff had submitted documentation of $300,424.49 for the period May 1, 1997 through June 8, 2001. On August 21, plaintiff submitted updated documentation of damages, showing that as of August 16, 2001, the amount paid to or owing to Gentiva was $341.142.03. (Note: This figure includes correction of an apparent $20,000.00 error made by plaintiffs in their pleading when $80,000 was subtracted from $133,180.01; the correct solution is $53,180.01, not $73, 180.01.

Defendant has not tendered any objection to these numbers. Accordingly, I find that to be the correct amount of benefits that the Plan should have but did not pay for Lucas Fritcher's care for that period of time.

Despite being directed to do so, Plaintiff has not submitted any information regarding a per diem charge by Gentiva after August 16, making it impossible for the court to extend the

amount forward for entry into final judgement. Accordingly, no award is made for the period after August 16, 2001.

**Attorney Fees**

The court has already ruled, in its August Order, that the plaintiffs are entitled to recover their attorney fees from the defendant. That issue is not re-visited herein. Rather, the issue to be resolved here in is the amount of those fees.

As noted in the earlier order, the starting point for calculation of attorneys' fees is the lodestar amount, or the product of the number of hours reasonably expended and a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424 (1983). The reasonable hourly rate is the rate charge by lawyers of a similar ability and experience in the community to their paying clients. McNabola v. Chicago Transit Author., 10 F 3d 501, 519 (7th Cir. 1993); Uphoff v. Elegant Bath Ltd., 176 F.3d 399, 407 (7th Cir. 1999). While an attorney's usual billing rate for comparable work is presumptively appropriate, the court is not bound to use that amount. Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993); People Who Care v. Rockford, 90 F.3d 1307, 1310 (7th Cir. 1996), the court is not bound to use that mount. Connolly v. National Sc., 177 F.3d 593, 596 (7th Cir. 1999). The burden of proving the market rate is on the party seeking fees. Uphoff, 176 F.3d at 407.

Plaintiffs' counsel claim a lodestar amount of $96,472.50, enhanced by a multiplier of 2" to 3". The lodestar amount, based on figures submitted by counsel, was calculated as follows:

| | | | |
|---|---|---|---|
| **Joseph Phebus** | 322.50 hours | @ $250/hr. | $80,625.00 |
| **Nancy J. Glidden** | 37.50 hours | @ $225/hr | $ 8,437.50 |

| Steven D. Wright | 26.90 hours | @ $150/hr | $ 4.035.00 |
| Thomas F. Koester | 4.50 hours | @ $225/hr | $ 1,012.50 |
| Gregory Hoffman | 18.75 hours | @ $150/hr | $ 2,812.50 |
| TOTAL | 410.0 hours | | $96,922.50 |

I note first that the two total amounts submitted by plaintiffs differ in the amount of $450. Despite the court's best efforts, the difference cannot be explained. Accordingly, I begin with the figure supported by the documents and pleadings, and that is $96,922.50.

Defendants challenge the fees sought by plaintiff on two grounds: (1) the opposition to the reasonableness the 410 hours spent by plaintiff's counsel in prosecuting this case. I have reviewed the billing records submitted by the five attorneys and see nothing that appears out of line. It appears that counsel took great care in avoiding duplicative efforts. For example, only one attorney appeared for each deposition, and only one attorney conducted the trial and subsequent hearings. In addition, there were to events during the progress of this case that not only delayed the case but added necessary hours to the time spent, namely the recusal of Judge McCuskey and the change in law occasioned by the Herschberger case. Give that history and the precise documentation submitted by plaintiffs' counsel, I find that the number of hours is reasonable.

A reasonable hourly rate is the market rate. Blum v. Stenson, 465 U.S. 886, (1984). To determine reasonable rates, the court should consider both the attorney's actual and historical rates and the prevailing rates in the community for similar litigation. Id. Other courts have considered additional factors, such as the opportunity costs, Louisiana Power & Light Co v Kellstrom, 50 F.3d at 319, 328 (5th Cir. 1995), which involves the preclusion of the other cases

due to the acceptance of this one and related time limitations imposed by the case; the difficulty of the litigation, including the novelty of factual and legal issues, and the skill required to represent the client, Conner v. Mid South Ins. Agency Inc., 943 F.Supp. 663 (W.D. La. 1996). The amount involved and the results obtained are also important. Id.

The court first notes that counsel for both sides displayed a high level of competence. The case was well litigated in this court by both sides.

Nevertheless, defense counsel's comparison of the rates it charges the Plan with the rates plaintiffs' counsel seeks is not an appropriate basis for decreasing the hourly rate. First, there are costs inherent in a contingency agreement, such as that between plaintiffs and their counsel, that do not present themselves in an hourly arrangement such as defense counsel has with defendant. There is little or no risk of non-payment when representing an institutional client such as defendant, especially since a plaintiff paying by contingency is only paying if counsel is successful, while an hourly arrangement contains no such risk. The surety of payment is reflected in a lower hourly rate. Representing an institutional client is a very different legal services market than is representing a plaintiff on contingency.

Further, I find that the length of time that this case took from beginning to end - over four years - significantly increased the opportunity cost to plaintiffs' counsel. There were obvious time constraints imposed by the necessity to brief - and in some cases rebrief - the substantial legal issues involved in this case. One of those issues was relatively novel, based as it was on an intervening change in the law that governed the standard of review. Other issues, not necessarily novel, nonetheless required significant research and careful drafting, all time consuming tasks.

Finally, I note the outcome. Plaintiffs sought reinstatement of benefits and that is precisely what they obtained. As a result of this litigation, defendant must compensate plaintiffs for their payment of wrongfully-withheld benefits valued in excess of $300,000 (and that was several months ago). A contingent fee award would be $100,000, roughly equivalent to the amount established as the lodestar amount.

Plaintiffs' counsel have submitted affidavits that effectively establish that they are seeking their customary hourly rate, a rate that other courts have presumably found reasonable in the market place because those rates have been awarded. Although plaintiffs have not submitted evidence of what other attorneys in the Central Illinois market charge for representing plaintiffs in ERISA action, neither have defendants submitted any evidence that the hourly rates sought her are unreasonable.

With respect to plaintiff's request that the fees be enhanced by a multiplier of 2 or 3, I find nothing to justify such an enhancement. No new law was made in this case, and although there is some intangible benefit to Plan participants and beneficiaries, the primary parties to benefit are the plaintiffs in this action.

For these reasons, I find that the rates are reasonable, the hours pent are reasonable, and the lodestar figure stated above is the value of the services rendered by counsel to the plaintiffs. Plaintiffs are therefore entitled to recover $96,922.50 in attorney fees.

Plaintiffs have also tendered documentation of $15,363.72 in costs. Defendant has not objected to those costs, and ERISA allows a prevailing party to recover costs. §1132(g).

The total amount of attorney's fees and costs to be reflected in the judgment is therefore $112,286.22.

**Prejudgment Interest**

I have already found that plaintiffs are entitled to prejudgment interest. As previously noted, I do not believe such interest to be extra-contractual or punitive; rather, it is part and parcel of reinstatement of benefits and re-payment of wrongfully withheld benefits, designed to make the plaintiffs whole. See, In re: Amoco Cadiz Oil Spill, 954 F.2d 1279, 1332 (7th Cir. 1992); Hansen v. Continental Ins. Co., 940 F. 2nd 971 (5th Cir. 1991). The purpose of awarding prejudgment interest is to compensate the harmed party and to restore that party to the status quo ante; there is no punitive aspect to an interest award. See, Boston Children's Heart Foundation v. Nadal Ginard, 73 F3rd 429 (1st Cir. 1996); Diduck v. Kaszychi & Sons Contractors, Inc., 974 F.2d 270 (2nd Cir. 1992).

The issue to be resolved is simply the proper calculation of the amount. The Seventh Circuit has held that the interest rate on prejudgment interest is to be based on the prime rate or market rate. Gorenstein Enterprises Inc. v. Quality Care - USA, Inc, 874 F.2d at 431, 436 (7th Cir. 1989). Plaintiff has tendered an affidavit and calculations by banking expert Scott Hancock, Trust Officer at Country Trust Bank and the administrator of the Mark and Martha Fritcher Escrow Account and the Lucas Fritcher Guardianship Account. Hancock identified the annually compounded annualized loss that the two accounts incurred as a result of payments made that should have been made by the plan. The actual rate of loss was 9.75% for the guardianship and 8.33% for the escrow account.

Despite those rates, plaintiffs seek a prejudgment interest in the amount of 8.33%, and they do not ask for compounding. Mr. Allan Penweell of Busey Bank performed calculations on a bank computer program, showing that the interest due to the plaintiffs as of August 15,

2001, using those numbers is $50,986.29. This is considerably less than the interest that could be awarded should the court employ the methods approved in this Circuit. I see no problem, therefore, in reflecting prejudgment interest in the amount of $50,986.29.

These same numbers yield a per diem accrual of interest in the amount of $55.74. Ninety-three days have passed since August 16 until the date of this order, the accrued interest is $5,281.82. That amount is included in the judgment entered.

Finally, I note that defendant has made an argument that these figures do not take into account the interest the two accounts were earning. That makes absolutely no sense. The prejudgment interest is to make the plaintiffs whole for the amounts that were expended unnecessarily, thereby precluding the accounts from earning interest on those amounts. The interest being earned on the remaining account balances has no bearing on this question.

## CONCLUSION

The Clerk is directed to enter judgment in favor of plaintiffs and against defendant. Damages in the amount of $341.142.03; prejudgment interest in the amount of $56,170.11; and attorneys fees and costs in the amount of $112.286.22 are awarded to plaintiffs.

ENTER this 15th day of November, 2001.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE